NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| Amal SHEHABELDEN, | : | |
| Plaintiff, | : | Civil No. 10-5518 (AET) |
| v. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | **OPINION** |
| Defendant. | : | |

THOMPSON, U.S.D.J.

## I.   INTRODUCTION

This matter has come before the Court upon Plaintiff Amal Shehabelden's appeal of the decision of the Commissioner of the Social Security Administration to deny Plaintiff disability insurance benefits under Title II of the Social Security Act.  Plaintiff seeks a reversal or, in the alternative, remand of the Commissioner's decision denying her request for benefits [8].  Defendant Commissioner of Social Security ("Commissioner") seeks affirmance of the Commissioner's decision [9].  The Court has decided the appeal upon the submissions of both parties and without oral argument, pursuant to L. Civ. R. 9.1(b).  For the reasons detailed below, we will affirm the decision of the Commissioner.

## II.   BACKGROUND

Plaintiff Amal Shehabelden was born January 1, 1966, and was forty-five years old at the time of this appeal.  (Administrative Record ("R") 224).  She has a college degree, (R. at 20), and has work experience as an internal auditor and a dividend clerk, (R. 14).  Plaintiff stopped

working on May 14, 2007, when pain in her left leg made her unable to sit or stand for long periods. (R. 25–26.) She also suffers from pain in her knees and back and has been diagnosed with depression. (R. 27–29.)

Plaintiff filed an application for Disability Insurance Benefits on July 23, 2007, but her claim was denied at the initial and reconsideration levels of appeal. (R. 68, 77.) Plaintiff timely requested an administrative hearing, and on November 19, 2009, Administrative Law Judge Robert Gonzalez held a hearing at which he reviewed the evidence and heard Plaintiff's testimony and the testimony of vocational expert David Sypher. (R. 16–65.) On January 11, 2010, ALJ Gonzalez issued a decision concluding that Plaintiff did not qualify for disability and that Plaintiff has the residual functioning capacity to perform the requirements of her past relevant work. (R. 8–15.) This decision became the Commissioner's final decision when the Social Security Administration Appeals Council denied Plaintiff's appeal on August 25, 2010. (R. 1–3.) Plaintiff filed the Complaint on October 22, 2010, requesting reversal or remand of the decision. (Compl. 1–3) [1].

III.   ANALYSIS

A. Standard of Review

This Court reviews Social Security appeals under 42 U.S.C. § 405(g), which empowers this Court to enter "a judgment affirming, modifying or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ determinations, this Court applies a "substantial evidence" standard of review. *Id*. The "substantial evidence" standard is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and therefore requires "more than a mere scintilla." *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994) (citing *Richardson v. Perales*, 402

U.S. 389, 400 (1971)). This standard "is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Where the Commissioner's factual findings are supported by substantial evidence in the record, they are considered conclusive even though the Court might have decided the inquiry differently. 42 U.S.C. § 405(g); *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

The ALJ need not engage in a comprehensive analysis when explaining why he or she is rejecting probative evidence. *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice. *Id*. The ALJ is not required to reference each and every treatment notation with particularity in the analysis, but must "consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." *Fargnoli*, 247 F.3d at 42.

### B. Standard for Disability Benefits Determination

Disability is defined as the "inability to engage in any substantial gainful activity[1] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To show disability, a claimant must "furnish[] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." *Id.* § 423(d)(5)(A).

The Commissioner employs a five-step sequential evaluation process for disability claims under the Act. *See generally* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). The threshold inquiry looks to (1) whether the claimant has engaged in any

---

[1] "Substantial gainful activity" refers to jobs that exist in large numbers in the region where the claimant lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A).

"substantial gainful activity" since her alleged disability onset date.  If not, the Commissioner considers (2) whether the claimant has any impairment or combination of impairments that is "severe" enough to limit the claimant's ability to work.  20 C.F.R. §§ 404.1520(b)–(c), 404.1521.  If the claimant has a severe impairment, the Commissioner then examines the objective medical evidence to determine (3) whether the impairment matches or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* §§ 404.1520(d), 404.1525, 404.1526.  If so, the claimant is automatically eligible for benefits; if not, the Commissioner determines (4) whether the claimant has satisfied her burden of establishing that she is unable to return to her past relevant work.  *Id.* §§ 404.1520(f), 404.1560(b); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) (internal citations omitted).  If the claimant meets this burden, the burden shifts to the Commissioner to show (5) whether other work exists in significant numbers in the national economy that the claimant could perform given her medical impairments, age, education, past work experience, and residual functional capacity ("RFC").  20 C.F.R. § 404.1520(g); *Poulos*, 474 F.3d at 92.

### C.  The ALJ's Findings and Final Determination

Following this five-step procedure, ALJ Gonzalez concluded as follows:  (1) Plaintiff met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since May 14, 2007, (R. 10); (2) Plaintiff had one severe impairment—a fracture of the lower left leg—but the evidence did not show any other impairments that would be considered severe, (R. 10); (3) Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526, (R. 12);  (4) Plaintiff retained the RFC to perform the full range of sedentary work and a range of light work as defined in 20 C.F.R. § 404.1567(b), (R. 12), and Plaintiff is capable of performing her past work as an internal auditor and as a dividend clerk, (R.

-4-

14). Accordingly, the ALJ concluded that Plaintiff was not disabled from May 14, 2007, through the date of his decision. (R. 12.)

### D. Plaintiff's Objections to the ALJ's Determination

On appeal, Plaintiff asserts that the record establishes her eligibility for benefits and that the final administrative decision is not based on the substantial evidence in the record. (Pl.'s Br. 1.) Specifically, Plaintiff argues as follows: (1) the ALJ committed error at step two of the sequential analysis by not finding her depression to be a severe impairment; (2) the ALJ committed error by finding that Plaintiff's lower leg fracture was her only severe impairment, ignoring other leg conditions Plaintiff continues to suffer; (3) the ALJ improperly rejected the uncontradicted medical opinions of Dr. Goldberg, Dr. Al-Salihi, and Dr. Ratush; and (4) at step four of the analysis, the ALJ failed to explain which hypothetical question posed to a vocational expert formed the basis for his conclusion that Plaintiff could return to her past work as an auditor.

#### 1. Plaintiff's Depression

Plaintiff believes that the ALJ erred at the second step of the analysis by not finding that her depression constitutes a severe impairment. We disagree.

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). To show that an impairment is severe, however, a claimant must demonstrate "something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quotation and citations omitted). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Examples of basic work activities include (1) "physical

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) the capacity to see, hear, and speak; (3) the ability to understand, carry out, and remember simple instructions; (4) the use of judgment; (5) the ability to respond appropriately to "supervision, co-workers and unusual work situations;" and (6) the ability to deal with "changes in a routine work setting." *Id.*

Although the threshold for meeting the definition of a "severe impairment" at step two is low, the burden is on Plaintiff to provide evidence demonstrating the disabling impact of her depression. Plaintiff claims she has satisfied her burden primarily because her treating physician, Dr. Edward Ratush, diagnosed her as having a "major depressive disorder" with symptoms including crying, panic attacks, poor concentration and memory, increased anger and fatigue, and passive suicidal thoughts. (R. 270.) Dr. Ratush described her as having limited understanding and memory, limited ability to sustain concentration, and a limited ability to adapt to changes in the work setting. (R. 273.) Plaintiff argues that, in contrast, there is no medical evidence to support a finding that she does not suffer a severe mental impairment, and that the ALJ erred by rejecting the opinion of Plaintiff's treating physician.[2]

Contrary to Plaintiff's argument, the ALJ did not reject the opinion of Dr. Ratush that Plaintiff suffered from depression. Rather, the ALJ recognized that Plaintiff had been treated for depression, (R. 11), but found that her condition was not severe. In particular, the ALJ observed that Plaintiff had never sought treatment with a psychiatrist or psychologist, that she had never required hospitalization due to depression, and that Plaintiff's condition had improved with

---

[2]  A state-agency psychologist—a non-treating physician—also found that Plaintiff had moderate limitations on her ability to maintain concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, be punctual, complete a normal work-week without interruptions from psychologically-based symptoms, and respond appropriately to work-place changes. (R. 290–91.) The ALJ considered the psychologist's finding but did not afford the opinion significant weight because it was based solely on a review of the evidence without an examination of the Plaintiff. (R. 12.) This was not error. *See* 20 CFR § 404.1527(d) (listing factors—including treatment relationship—to consider in deciding what weight to give to any medical opinion).

medication, (R. 246). (R. 11.) The ALJ stated that mental status testing revealed only minor abnormalities in Plaintiff's concentration, and this too is supported by the record. For example, Dr. Alexander Goldberg stated that Plaintiff "responds appropriately to questions," (R. 228), "is reliable and follows up with me on a regular basis," (R. 269), and has a mental status of "normal affect," (*id.*). Even Dr. Ratush found that her judgment was fair, (R. 271), her memory was only mildly impaired, (*id*), and her prognosis was "fair," (R. 274). What is more, Plaintiff reports that she has had periods of depression ("too many to count") since she was a teenager, (R. 270), yet she never claimed that these instances prevented her from working in the past, she admitted that she stopped working because of her leg and not depression, (R. 25), and she did not even claim depression when she filed for disability benefits, (R. 151).

Finally, the ALJ's conclusion that Plaintiff's depression was not severe is also supported by Plaintiff's own testimony. The ALJ noted that Plaintiff was able to take care of her children, perform some activities of daily living,[3] and concentrate well enough to read romance novels and watch television. (R. 11–12.) In addition, Plaintiff reported in 2007 that she could pay bills, handle a savings account, count change, use a check book, (R.174), and help her children with homework, (R. 171). She also stated that her condition did not affect her ability to understand, follow instructions, or get along with others. (R. 175.) All of these reported activities are inconsistent with Plaintiff's claims of disabling depression.

Far from demonstrating "something beyond a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work," *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d at 360, there is substantial support in the record for the conclusion that Plaintiff's

---

[3] Plaintiff argues, based on 20 C.F.R. 416.972(c), that her daily activities cannot be considered relevant to her ability to perform work-related activities. (Pl.'s Br. 24.) However, that regulation states only that the Commissioner does "not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity." 20 C.F.R. 416.972(c). Contrary to Plaintiff's position, these activities are still relevant to her *ability to perform* substantial gainful activity, even if the daily activities themselves do not constitute substantial gainful activity.

depression would not "significantly limit [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Accordingly, we find no error.

### 2. Plaintiff's Leg Conditions

Plaintiff next argues that the ALJ erred by finding that Plaintiff's only severe impairment was the fracture of her lower left leg instead of finding that she continues to suffer from disabling pain in her leg from osteomyelitis or osteoarthritis, or from peripheral neuropathy stemming from these two conditions. (Pl.'s Br. 12–13.) Again, at step two, the burden is on the Plaintiff to provide evidence demonstrating that the impairment exists and is severe. The ALJ found that no objective medical evidence showed that Plaintiff suffered from osteomyelitis or osteoarthritis. (R. 10–11.) These findings were supported by substantial evidence in the record.

The ALJ recognized that Plaintiff was diagnosed with both osteomyelitis and osteoarthritis by Dr. Farouk Al-Salihi, (R. 245), but the ALJ considered and rejected these diagnoses because they did not square with the objective medical evidence. (R. 10–12.) Regarding osteomyelitis, the record shows that several diagnostic tests, including a three-phase bone scan, (R. 238), an MRI, (R. 240), and blood work (R. 222), all failed to establish any evidence of osteomyletis.[4] Because the physicians' opinions were directly contradicted by the diagnostic studies, the ALJ was entitled to reject the opinions outright. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999); *Johnson v. Comm'r of Soc. Sec.*, Civ. No. 08-4901, 2009 WL 4666933, at *6 (D.N.J Dec. 3, 2009) ("The existence of contradictory medical evidence is a proper basis for rejecting the opinion of a treating physician[.]"). In addition, Dr. Al-Salihi's opinion that the claimant was "totally disabled" was properly rejected because an opinion regarding a claimant's ultimate disability, even when offered by a treating physician, cannot be given controlling weight. *See Knepp v.*

---

[4] Plaintiff cites the blood cell study, which could not conclusively rule out osteomyelitis, as evidence *in her favor*. (Pl.'s Br. 12.) It is Plaintiff's burden, however, to present evidence of a severe impairment. Evidence showing that an impairment cannot be ruled out—that is, evidence that she may or may not have osteomyelitis—fails to satisfy this affirmative burden.

*Apfel*, 204 F.3d 78, 85 (3d Cir. 2000) (stating that "ultimate decision concerning the disability of a claimant is reserved for the Commissioner"); 20 C.F.R. § 404.1527(e).

Regarding osteoarthritis, the ALJ again considered Dr. Al-Salihi's diagnosis that Plaintiff suffered from disabling osteoarthritis, (R. 267), but determined that there was no objective findings in the record to support the diagnosis. (R. 11.) The ALJ's decision was proper: there is simply not enough evidence to support Dr. Al-Salihi's conclusory diagnosis. There is, however, evidence that undermines the physician's conclusion. For example, when Plaintiff was examined in 2007, the physician found that she was able to "ambulate[] without any assistive device with a normal heel-to-toe gait," that she was "able to stand on heels and toes with light contact guard," that she got on and off the examination table independently, that her "range of motion of the lower extremity [was] fairly well-preserved bilaterally," and that she "denie[d] any tenderness or resting pain of the leg." (R. 253.) Given the lack of evidentiary support for Dr. Salihi's diagnosis and the contradictory evidence that Plaintiff had normal use of her leg, the ALJ was entitled to discount the doctor's conclusion.[5] *See Plummer*, 186 F.3d at 429.

Even if Plaintiff's leg conditions were sufficient to pass step-two analysis, however, the result would be no different because there is substantial evidence in the record to support the ALJ's finding that Plaintiff's leg conditions did not prevent her from performing the tasks required by her past relevant work. The ALJ took Plaintiff's leg conditions into consideration when assessing her RFC as well as in his step-four determination that Plaintiff was capable of performing her past relevant work. (R. 12–14.) The ALJ found that Plaintiff "would have some physical limitations resulting from her fractured tibia" but that her limitations would not preclude her from performing work activities. (R. 13.) Accordingly, any error at step two of the sequential

---

[5] As with Plaintiff's alleged osteomyelitis, Dr. Al-Salihi concluded that Plaintiff's alleged osteoarthritis left her "totally disabled," but this determination was properly rejected because it is reserved to the Commissioner to make. *See Knepp*, 204 F.3d at 85.

analysis would have been harmless in this case.

### 3. Rejection of Medical Opinions of Treating Physicians

Plaintiff next argues that the ALJ improperly rejected the un-contradicted medical opinions of Dr. Goldberg, Dr. Al-Salihi, and Dr. Ratush.  As we have already explained, however, those opinions were not un-contradicted, and accordingly, the ALJ was entitled to accord them the weight they deserved based on the ALJ's review of the entire record.

An ALJ typically must give great weight to a treating source's[6] opinion unless other medical evidence contradicts it.  *Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir. 1989).  However, a treating source's opinion does not receive controlling weight where it is inconsistent with the other substantial evidence, or where it is not supported by medically-acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1527(d)(2).  Where contradictory evidence exists, an ALJ may reject a treating source's opinion as long as the ALJ explains the reasons for doing so.  *Allen*, 881 F.2d at 41.  Moreover, when the ALJ chooses not to give a treating source's opinion controlling weight, he must determine the proper weight by applying the factors enumerated in the regulations, including the length of the treatment relationship, the frequency of examinations, the nature and extent of the treatment relationship, and consistency with the record. 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ considered and evaluated the opinions of Drs. Goldberg, Al-Salihi, and Ratush, but found that the opinions were not entitled to much, if any, weight.  (R. 10–12.) The ALJ stated that the diagnosis of osteomyelitis made by Drs. Goldberg and Al-Salihi was "not supported by the medical findings."  (R. 11.)  As we discussed above, this finding was proper: a bone-scan, MRI, and blood work all failed to demonstrate osteomyelitis.  Dr. Al-Salihi's diagnosis

---

[6] A treating source may be any of the "[a]cceptable medical sources" specified in 20 C.F.R. 404.1513(a), including licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.

of osteoarthritis was also rejected because "there [were] no objective findings in the record to support this diagnosis." (R. 11.) As discussed above, not only was that diagnosis not supported by any other medical evidence, but it was also undermined by an evaluation of Plaintiff's functional abilities. Finally, although Dr. Ratush diagnosed Plaintiff as having disabling depression, the ALJ properly weighed this diagnosis against other medical evidence and Plaintiff's testimony about her daily activities and found that any depressive disorder did not rise to the level of a "severe" impairment. Accordingly, we find that the ALJ did not err in rejecting the opinions of the treating physicians.

### 4. Use of Vocational Expert's Testimony

Lastly, Plaintiff argues that the ALJ failed to explain which hypothetical question posed to a vocational expert was used to conclude that Plaintiff could return to her past work. To determine whether Plaintiff was capable of performing any of her past relevant work, the ALJ relied upon the testimony of vocational expert David Sypher. (R. 14.) Plaintiff argues that the ALJ failed to identify what testimony he relied on—specifically, which of the hypotheticals posed to Sypher the ALJ credited. (Pl.'s Br. 16.) To the contrary, however, it is abundantly clear, based on the ALJ's step-four RFC findings, which of the hypotheticals the ALJ used to make his past-work determination. The ALJ determined at step four of the analysis that Plaintiff was able to sit for six hours, stand and/or walk for a minimum of two hours in a normal 8-hour work day, lift and/or carry 10 pounds frequently, and lift and/or carry 20 pounds occasionally. (R. 12.) Additionally, the ALJ noted that some activities would be restricted due to Plaintiff's postural limitations. (R. 12.) These findings were echoed nearly verbatim in one of the hypothetical questions posed to Mr. Sypher.[7] (R. 49–50.) And Mr. Sypher answered in response to that

---

[7] That question stated:
"Okay, I have another hypothetical. For this one I'd like you to assume a hypothetical person the Claimant's age, education, and work history. And further assume that that person has a residual functional capacity to

-11-

question that the hypothetical claimant would be able to perform Plaintiff's past relevant work. (*Id.*) It was thus clear which hypothetical the ALJ used, and we find that Mr. Sypher's answer to that hypothetical provides substantial support for the ALJ's determination.

Plaintiff also asks why the ALJ did not accept Sypher's testimony, in response to another question posed by the ALJ, that a hypothetical person could not work. (Pl.'s Br. 30.) This argument is unavailing. A sufficient hypothetical question need only reflect "all of a claimant's *credibly established limitations*." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (internal citations omitted) (emphasis in original). The ALJ's hypothetical discussed above did exactly that, and it was not error for the ALJ to disregard the answers to other hypotheticals that did not reflect credibly-established limitations. The question Plaintiff refers to was hypothetical precisely because the ALJ had not yet determined what impairments or limitations Plaintiff faced. Once the ALJ determined that Plaintiff did not suffer the limitations posed in some of the hypothetical questions, it was perfectly logical to then disregard Sypher's responses to those discredited hypotheticals.

## IV.    CONCLUSION

For the reasons stated above, the Court concludes that substantial evidence supports the ALJ's factual findings and thus affirms the Commissioner's final decision to deny benefits for Plaintiff. An appropriate order will follow.

DATE: November 21, 2011

                                        */s/ Anne E. Thompson*
                                        ANNE E. THOMPSON, U.S.D.J.

---

    occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds. This person can stand and/or walk at least two hours out of an eight-hour workday, and can sit about six hours in an eight-hour workday. Again, this person will not be able to climb ladders. And can occasionally engage in postural limits. And by postural limits I mean this person can occasionally balance, stoop, kneel, crouch, and crawl. Could such a person do the Claimant's past work?"
Sypher responded: "Judge, based on that hypothetical it does appear that either of the two past relevant jobs would still appear to be suitable." (R. 49–50.)